IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2018 Session

## ASHLEY ELIZABETH SAMPLE v. ROBERT SHAYNE SAMPLE

**Appeal from the Circuit Court for Montgomery County
No. CC-16-CV-511 Ross H. Hicks, Judge**

_____

**No. M2017-02409-COA-R3-CV**

_____

Husband, a member of the United States Army, and Wife divorced. The trial court awarded Wife a portion of Husband's military retirement pay, including his VA disability pay. Husband took issue with the trial court's method of calculating Wife's share of his retirement pay, as well as its determinations as to the residential parenting schedule and child support obligations. For the reasons stated herein, we affirm in part, reverse in part, and vacate in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part; Reversed in Part; Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Katie B. Klinghard, Clarksville, Tennessee, for the appellant, Robert Shayne Sample.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Ashley Elizabeth Sample.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Robert Sample, the Defendant-Appellant (hereinafter "Husband"), and Ashley Sample, the Plaintiff-Appellee (hereinafter "Wife"), married on May 15, 2009. Together, the parties have two minor children, one eight years old, the other five. Due to differences in employment, educational, and geographic circumstances of the parties, their marriage deteriorated.

Husband and Wife met while serving in the United States Army in Germany. While still living in Germany, the parties had their first child. In 2011, the parties left

Germany for the United States, Husband having enrolled in the Green to Gold Program at the University of Maryland, a program providing Active Duty enlisted soldiers the opportunity to obtain a college degree. In May 2013, Husband and Wife had their second child. That same month, both parties left Maryland—Husband for Georgia to complete training, and Wife to Tennessee to stay with her parents. Both of the parties' two children went with Wife to live in Tennessee.

In March 2014, Husband completed training in Georgia and was transferred to Fort Campbell, Kentucky. He and Wife purchased a home in Clarksville, Tennessee, and Wife began law school in August 2014 at Belmont University. For the next year, Husband and Wife's marriage deteriorated, culminating in their physical separation in August 2015 when Wife moved out of the marital home. According to both parties, the marriage quickly turned toxic after their physical separation.

Wife filed for divorce on March 23, 2016, alleging irreconcilable differences and inappropriate marital conduct. Wife sought status as the primary residential parent for the parties' two minor children and for Husband to pay alimony, child support, and any and all debts of the parties. In December 2016, Wife moved for pendente lite child and spousal support and a pendente lite parenting plan, and the trial court awarded each of them. In its order, entered on January 20, 2017, the trial court ordered Husband to pay $950.00 per month directly to the daycare facility of the parties' minor children, as well as $700.00 and $300.00 per month to Wife for pendente lite child support and spousal support, respectively.

On March 16, 2017, Husband and Wife voluntarily attended mediation, during which they resolved all issues relative to their debts and the division of their real property, assets, and vehicles. The issues of alimony, the division of Husband's 2016 tax refund, Husband's military retirement benefits, custody of the children, and attorney's fees, however, were not agreed upon and were left for the trial court to decide. A final evidentiary hearing was held in June 2017, at the conclusion of which the trial court requested each party to submit proposed findings of fact and conclusions of law. After compliance by both parties, the trial court issued a memorandum opinion on August 1, 2017 and a final decree of divorce on October 3, 2017. The final decree granted Wife the divorce on the ground of inappropriate marital conduct. Incorporated into the final decree was a permanent parenting plan, which designated Wife as the primary residential parent, and gave Wife and Husband 265 and 100 days of parenting time, respectively. Attached to the parenting plan was a child support worksheet, which granted Wife a child support credit of $975.00. The final decree also awarded Wife attorney's fees in the amount of $5,942.50, as well as a portion of Husband's military retirement pay.

As to the portion of Husband's military retirement pay to which Wife was entitled, the trial court found that, because Husband and Wife married on May 15, 2009 and physically separated on August 14, 2015, the parties were together for approximately 75

months. The trial court additionally found that, because Wife did not contribute in any way to Husband's military service after their physical separation, Wife was only entitled to a portion of Husband's military retirement pay based on this 75-month period. Pursuant to federal law, the division of an active service member's military retirement pay is based on a hypothetical retirement date—the date of divorce—using the service member's "High-3" pay and years of service at that date; the High-3 retired pay is calculated by taking the monthly amount that is the average of the service member's highest 36 months of basic pay. *See* 10 U.S.C. 1407(c). Here, the final decree provided that the High-3 calculation would use Husband's base pay for the 36 months in the 2014, 2015, and 2016 years, and the trial court determined that Husband's average monthly base pay for such period to be $4,890.30. Moreover, the trial court found that the portion of Husband's military retirement pay also included any sum taken by Husband in addition to or in lieu of his retirement benefits, including, but not limited to, his Department of Veterans Affairs ("VA") disability pay.

On October 27, 2017, Husband filed a motion to alter or amend the final decree and for a new trial on several grounds. First, Husband alleged that the trial court incorrectly calculated the High 3 retirement pay by using the 2014, 2015, and 2016 years rather than 2013, 2014, and 2015 because, pursuant to its memorandum opinion, the trial court had previously ordered that Husband's hypothetical retirement date for purposes of the calculation was August 14, 2015. Also pertaining to his military retirement pay, Husband maintained that the trial court improperly found that such pay included his VA disability benefits. Husband also took issue with the parenting plan incorporated into the final decree as well as the child support worksheet used to determine such amounts in the final decree. Regarding the former, Husband argued that it incorrectly reflected the number of days of parenting time he should have been afforded. According to Husband, he was entitled to 116 days of parenting time per year rather than the 100 reflected in the parenting plan. As to the latter, Husband argued that Wife's child care credit of $975.00 was improper because such amount accounted for the summer months during which Wife did not have custody of the parties' two children. Finally, Husband asserted that the trial court, based on his failure to file an answer or counter-complaint to Wife's complaint for absolute divorce, improperly prohibited him from presenting any evidence of Wife's alleged adultery or inappropriate marital conduct.

After receiving Husband's motion, the trial court entered an order on November 27, 2017 amending its findings regarding child care. The order granted Husband's motion by clarifying the breakdown of how child support would be calculated, but it denied Husband's motion in all other respects. Husband filed a timely notice of appeal on December 6, 2017.

## ISSUES PRESENTED

The parties have raised several issues for our review, which we have rephrased and re-ordered as follows:

1. Whether the trial court erred in limiting Wife's entitlement to Husband's military retirement pay at the date of physical separation instead of using the parties' actual months of marriage that overlapped Husband's military service.
2. Whether the trial court erred in calculating the Husband's High-3 average.
3. Whether the trial court erred by awarding Wife the portion of Husband's military retirement that included his VA disability benefits.
4. Whether the trial court erred in calculating Husband's parenting time for purposes of the child support calculation.
5. Whether the trial court erred by granting Wife a credit on the child support worksheet for the parties' minor children during the summer months when Husband had custody of the minor children.
6. Whether the trial court erred by prohibiting Husband from presenting evidence related to Wife's alleged adultery or inappropriate marital conduct.
7. Whether the trial court abused its discretion by awarding Wife attorney's fees.
8. Whether this Court should award Wife attorney's fees on appeal.

STANDARD OF REVIEW

In an appeal from a bench trial, we review findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). However, we review questions of law de novo with no presumption of correctness. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

DISCUSSION

I. *Husband's Military Retirement Pay*

The parties raise several issues on appeal relating to the division of Husband's military retirement pay. Wife argues that the trial court improperly assessed her entitlement to such pay at only 75 months—the length of the parties' marriage that overlapped Husband's military service prior to their physical separation. Husband argues that the trial court incorrectly calculated his High-3 average because, in the 36 months required for the calculation, the trial court included months after which he and Wife had physically separated. Husband also argues that the trial court erred in including his VA disability benefits in the portion of his military retirement pay awarded to Wife.

Tennessee law authorizes state trial courts to divide all—or a portion—of a military retirement benefit. Specifically, Tennessee Code Annotated section 36-4-121 defines marital property to include "the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefits accrued as a

- 4 -

result of employment during the marriage." Tenn. Code Ann. § 36-4-121(b)(1)(B)(ii). Additionally, federal law authorizes state trial courts to divide military retirement benefits earned by a party during a marriage. Pursuant to the Uniformed Services' Former Spouse's Protection Act ("USFSPA"), a state trial court "may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). The term "disposable retired pay" means "the total monthly retired pay to which a member is entitled," less certain amounts provided by the USFSPA. *Id.* at § 1408(a)(4)(A). The amount of disposable retired pay awarded to the non-military former spouse, however, has been subject to recent amendments to the USFSPA.

On December 23, 2016, Congress passed the National Defense Authorization Act for Fiscal Year 2017[1] ("NDAA 2017"). Before, state trial courts had been permitted to develop and implement their own methods for dividing military retirement pay; however, with the passage of the NDAA 2017, Congress created a uniform standard for such division and provided new limitations for disposable military retirement pay. The amended and most recent version of the relevant statute reads:

> [I]n the case of a division of property as part of a final decree of divorce, dissolution, annulment, or legal separation that becomes final prior to the date of a member's retirement, the total monthly retired pay to which the member is entitled shall be . . . the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service *on the date of the decree of divorce*, dissolution, annulment, or legal separation, as computed under [Section 1407] . . . .

*Id.* at § 1408(a)(4)(B)(i). Section 1407 of the USFSPA provides that the member's retired pay base is the member's High-3, which is equal to "the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by 36." *Id.* at § 1407(c).

According to the Department of Defense Financial Management Regulations ("DoD Regulations"), the changes implemented by the NDAA 2017 apply to cases "where the former spouse and member were divorced after December 23, 2016, when the court awards the former spouse a division of property and the member has not yet retired." Department of Defense Financial Management Regulation, DoD 7000.14-R,

---

[1] National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 641, 130 Stat. 2000 (2017).

Volume 7B, Chapter 29, paragraph 290801 (June 2017) ("DoD Reg."). In such cases, the DoD Regulations also clarify the limitations on the member's disposable retired pay set forth in Section 1408 of the USFSPA: "The amount of retired pay is limited to that which the member would have been entitled using the member's retired pay base and years of service on the date of the final decree of divorce, dissolution, annulment, or legal separation." DoD Reg. at 290802. Accordingly, in order to properly calculate the NDAA 2017 disposable retired pay amount, the DoD Regulations require that the court order provide the following three variables: (1) the fixed amount, percentage, formula, or hypothetical award that the former spouse is granted; (2) the member's retired pay base amount at the time of divorce; and (3) the member's years of creditable service on the date of divorce, dissolution, annulment, or legal separation. *See id.* at 290803.

Here, the trial court used a formula award to calculate the amount of Husband's military retirement pay to be awarded to Wife (TR, vol. 2, pgs. 153-54). The DoD Regulations provide that a formula award

> computes a former spouse's property interest in a military member's retired pay based on the relationship of the length of the parties' marriage during the member's creditable service (numerator) to the member's total service that is creditable toward retirement (denominator). A formula award is stated as a marital fraction in which the numerator and denominator are multiplied by a given percentage.

*Id.* at 290211. For the numerator, the trial court used 75 months.[2] It found that, because "[t]he parties married on May 15, 2009 and physically separated as Husband and Wife on August 14, 2015 . . . the parties were together for approximately seventy-five (75) months." This method, however, is in contravention of the language set forth in the DoD Regulations, which provide that, as stated above, the numerator is the "length of the parties' marriage during the member's creditable service." *Id.* In light of the federal statutory and regulatory language, and for purposes of the disposable retired pay calculation, the length of Husband and Wife's marriage during Husband's creditable service must take into account all of the months of their actual marriage, ceasing at the date of their final decree of divorce, not the date of their physical separation.[3]

As to the second and third variables required to properly calculate the NDAA 2017 disposable retired pay amount—the member's retired pay base and years of

---

[2] For the denominator, the trial court simply noted for the "months of military service", which satisfies the DoD Regulations. The DoD Regulations provide that, "[i]f the former spouse's award is expressed in terms of a formula, all the variables needed to calculate the formula must be included in the trial court order, *with the exception of a member's total number of months of creditable service . . .* which DFAS Garnishment Operations will provide . . . ." *Id.* at 290607 (emphasis added).

[3] Husband and Wife married on May 15, 2009 and divorced on October 3, 2017. Their marriage lasted 8 years, 4 months, and 18 days, or approximately 101 months.

creditable service on the date of the decree of divorce, dissolution, annulment, or legal separation—Husband takes issue with the trial court's computation of the second. We agree with Husband in one respect, but disagree with him in another.

Section 1407 of the USFSPA provides that the member's retired pay base is the member's High-3, which is equal to "the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by 36." 10 U.S.C. § 1407(c). Here, in its High-3 calculation, the trial court used Husband's December basic pay for years 2014, 2015, and 2016 and determined that Husband's average basic pay for such period was $4,890.30 (TR, vol. 2, pg. 154). This, however, is noncompliant with the USFSPA and the DoD Regulations in two respects. First, we are persuaded by Husband's argument on appeal that his year-to-date wage amount for the three years used should control the High-3 calculation rather than his basic pay for December of each year. Secondly, the USFSPA and the DoD Regulations require that the member's retired base pay is determined as of the date of the decree of divorce. *See* 10 U.S.C. § 1408(a)(4)(B)(i); DoD Reg. at 290802. In light of this language, and because Husband's retired base pay is his High-3 average, the High-3 calculation must account for the months leading up to Husband and Wife's divorce on October 3, 2017. Because these figures were never considered by the trial court in calculating the appropriate retirement benefit to be awarded, we vacate this portion of the court's award and remand the case to the trial court and order it to reopen the proof to receive this additional information and to recalculate the retirement benefit to be awarded accordingly.

Husband also argues that the trial court improperly awarded to Wife any VA disability benefits taken by Husband in addition to or in lieu of military retirement pay. After reviewing the record and the applicable law, we agree with Husband on this point as well.

Section 1408 of the USFSPA excludes from the definition of disposable retired pay amounts that are "deducted from the retired pay of such member . . . as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38." 10 U.S.C. § 1408(a)(4)(A)(ii). Compensation received under Title 38 includes disability benefits administered by the VA. Moreover, the recent United States Supreme Court decision in *Howell v. Howell*, which reaffirmed the Court's *Mansell*[4] decision, held that "federal law completely pre-empts the States from treating waived military retirement pay as divisible community property." *Howell v. Howell*, 137 S. Ct. 1400, 1405 (2017) (citing *Mansell*, 490 U.S. at 594-95). Additionally, the Court in *Howell* held that a state court "may not order a veteran to indemnify a divorced spouse for the loss in the divorced spouse's portion of the veteran's retirement pay caused by the veteran's

---

[4] *Mansell v. Mansell*, 490 U.S. 581 (1989).

waiver of retirement pay to receive service-related disability benefits." *Id.* at 1401. Because federal law and Supreme Court precedent controls this issue, we reverse the trial court's order pertaining to the inclusion of Husband's VA disability benefits in Wife's portion of his military retirement pay.

## II.  *Parenting Time and Child Support*

We next consider Husband's contention that the trial court incorrectly calculated his parenting time for purposes of the child support calculation. Husband first raised this issue in his motion to alter or amend the trial court's final decree of divorce, stating that the parenting plan "indicates that [Husband] has 100 days of parenting time per year, when in fact [Husband] has 116 days of parenting time per year." There is, however, no proof in the record to support such a conclusion. Both the parenting plan and the child support worksheet indicate that Husband has 100 days of parenting time. Moreover, the parenting plan explicitly notes that the parenting schedule "shall be based on the school calendar and time zone where the minor children primarily reside," but the school calendar is not included in the record. As such, it is impossible to determine whether the trial court incorrectly calculated Husband's parenting time. Without more, we must find that the evidence does not preponderate against the trial court's calculation that Husband has 100 days of parenting time.

Husband also argues on appeal that, because the parties' two children are in his care for nine weeks during the summer, the trial court erred in granting Wife a child care credit for 52 weeks rather than 43 weeks. The Tennessee Child Support Guidelines provide that additional expenses for a child's work-related childcare are included in the calculation to determine child support. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(a)(1). The Child Support Guidelines also define work-related childcare expenses as those expenses "necessary for either parent's employment, education, or vocational training that are determined by the tribunal to be appropriate, and that are appropriate to the parent's financial abilities and to the lifestyle of the child if the parents and child were living together." *Id.* at 1240-02-04-.04(8)(c)(1)

Here, the trial court awarded Wife a credit for $975.00 per month in childcare expenses. The trial court reached that amount after its receipt and consideration of a letter from Wife's attorney, attached to which were invoices denoting daycare expenses for the parties' two children. In her response to Husband's motion to alter or amend the final decree of divorce, Wife argued that the parties met in a chambers conference and "specifically agreed to exchange child care costs and details" and that the $975.00 is "properly reflected on the support worksheet." Further, Wife argued that the invoices attached to her attorney's letter to the trial judge were "presented in chambers and presented to counsel for [Husband] when the order was entered." The trial court also heard testimony from Wife in which she explained that, although the children are not actually in daycare during the summer months, she nevertheless pays the daycare fees throughout the summer in order to keep their spots reserved.

Although the costs and details of childcare expenses may have been presented to Husband and discussed in a chambers conference, that does not cure the fact that such information, as noted by Husband in his brief, cannot be found in the record. Accordingly, this aspect of the trial court's order is vacated, and this issue is remanded to the trial court for such further proceedings necessary and consistent with this opinion, taking into account the language from the Tennessee Child Support Guidelines cited above. The trial court may reopen the proof on this issue as well in order to assist it in reaching its determination.

### III.  *Alleged Exclusion of Husband's Evidence of Wife's Inappropriate Marital Conduct*

Next, Husband argues that the trial court erred in not allowing him to present any proof of Wife's adultery at trial "due to his failure to file a responsive pleading in the divorce." Citing to this Court's decision in *Edwards v. Edwards*, 501 S.W.2d 283 (Tenn. Ct. App. 1973), Husband claims that, because Wife failed to file a motion for default judgment, he should have been allowed to present proof of her own inappropriate marital conduct.

Rule 8.04 of the Tennessee Rules of Civil Procedure provides that "[a]verments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading." Tenn. R. Civ. P. 8.04. Allegations necessary to sustain an action for divorce, however, must be proved, regardless of the language above. *See* Tenn. R. Civ. P. 8.04(1). The *Edwards* decision, to which Husband cites in his brief, states that Rule 8.04

> is not interpreted to mean that a party is privileged to go to trial without calling to the attention of the Trial Court the complete absence of a necessary pleading.
>
> . . . .
>
> It would appear, therefore, that complete omission to answer must be taken advantage of by suitable application for default judgment, otherwise it is waived by proceeding to trial as if the pleadings were at issue.

*Edwards*, 501 S.W.2d at 290. Although the *Edwards* decision is good law, it is inapplicable as to Husband's argument.

As noted above, default judgment is not an available avenue for relief for a party seeking a divorce. Wife even noted in her own brief that she "knew the case would proceed to trial" and that she "didn't expect the [c]ourt to grant a default judgment and . . . simply chose to proceed to trial." Accordingly, the trial court committed no error in restricting and confining the presentation of proof of Wife's own adultery or

inappropriate marital conduct to that which was presented in the pleadings. Because Husband failed to file an answer or counter-complaint to Wife's complaint for divorce, Husband was not entitled to present any proof at trial as to any ground for divorce against Wife.

Moreover, from our review of the record, it is unclear how Husband may predicate any error upon the trial court's denial of Husband's attempt to present evidence of Wife's adultery or inappropriate marital conduct at trial. Husband's brief cites to only one portion of the transcript, from which the following exchange is taken:

> [Counsel for Husband]: Okay. From then on, were you going to any events with Mr. Sample for his employment?
> Wife: No. I ---
> The Court: [Counsel for Husband], I've allowed a lot of leeway here, but for someone who's not even before the Court in a responsive pleading that makes any allegations, I think I'm going to have to step in and limit you.
> [Counsel for Husband]: The only reason I'm asking these, Your Honor, is just as far as retirement, which is one of the key things we were having to talk about. They're claiming 96 months, which I believe would go up through this month, if I'm not mistaken. August would be 75. And so I just want to make it clear that they had physically separated at least 75 months.
> The Court: Okay. All right. I think that ---
> [Counsel for Husband]: I'll ---
> The Court: I think we've established that.
> [Counsel for Husband]: I'll move past that now, Your Honor.

The record does not reveal that Husband attempted to present proof of Wife's adultery or inappropriate marital conduct. The cited portion above certainly does not show that Husband attempted to do so, either. In fact, by his own words, Husband's counsel admitted he was referencing the parties' date of physical separation, not Wife's alleged adultery. For the foregoing reasons, we find that the trial court did not abuse its discretion in prohibiting Husband from presenting evidence related to Wife's alleged adultery or inappropriate marital conduct.

## IV.    *Attorney's Fees*

Lastly, we address Husband's contention that the trial court erred in awarding Wife attorney's fees. Although both parties asked for attorney's fees at trial, only Wife requests an award of attorney's fees on appeal

"It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Cain-Swope v. Swope*, 523 S.W.3d 79, 100 (Tenn. Ct. App. 2016) (citing *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011)). An award of

attorney's fees is appropriate when the disadvantaged spouse's income is not sufficient to pay the spouse's attorney's fees and the divorce fails to provide the spouse with a revenue source, such as from the property division or assets from which to pay the spouse's attorney's fees. *See id.* (citing *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002)). When determining whether to award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in Tennessee Code Annotated section 36-5-121(i); moreover, trial courts are afforded wide discretion in determining whether there is a need for attorney's fees as alimony in solido, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *See id.* (citing *Gonsewski*, 350 S.W.3d at 113).

The trial court found Wife was entitled to a judgment for her reasonable attorney's fees in the amount of $5,942.50. Wife had obtained employment as a law clerk, earning $39,000.00 per year, whereas Husband, with over 10 years in the United States Army, testified as to having both a stable job and a stable income. Additionally, at the time of trial, Wife's student loan debt totaled $147,000.00. The trial court also heard testimony from Wife that, since the birth of the parties' first child, she has served as the primary caretaker of their two children. Taking into account these facts, we find no abuse of discretion in the trial court's determination that an award of attorney's fees of $5,942.50 was reasonable under the circumstances. As noted above, trial courts are afforded wide discretion in determining whether to award attorney's fees. Accordingly, we defer to the trial court's decision and affirm the award of $5,942.50 of attorney's fees to Wife.

As to Wife's request for an award of attorney's fees on appeal, whether to grant such an award is within this Court's sole discretion. *Cain-Swope*, 523 S.W.3d at 101 (citing *Wilson v. Wilson*, No. M2008-02073-COA-R3-CV, 2009 WL 1037943, at *4 (Tenn. Ct. App. Apr. 17, 2009)). In considering a request for attorney's fees, we examine "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal . . . and any other equitable factor that need be considered." *Id.* at 101-02 (citing *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)). After considering these factors, we deny Wife's request for an award of attorney's fees on appeal.

## CONCLUSION

The trial court's order is, therefore, vacated in part, reversed in part and affirmed in part and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion.

_____

ARNOLD B. GOLDIN, JUDGE